FILED & JUDGMENT ENTERED
Steven T. Salata

Dec 14 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In re | ) | Bankruptcy Case No. 10-31642 |
| | ) | |
| LISA DENISE PENNINGTON, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JONATHAN D. FEIT and | ) | |
| JAMES, MCELROY & DIEHL, P.A., | ) | |
| | ) | Adversary Proceeding No. 10-03242 |
| Plaintiffs, | ) | (Consolidated with Adversary |
| | ) |  Proceeding No. 10-03243) |
| v. | ) | |
| | ) | |
| LISA DENISE PENNINGTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| MARCO (TONY) PETERS, Creditor | ) | |
| and Former Spouse of Debtor, | ) | Adversary Proceeding No. 10-03243 |
| | ) | (Consolidated with Adversary |
| Plaintiff | ) |  Proceeding No. 10-03242) |
| vs. | ) | |
| | ) | |
| LISA DENISE PENNINGTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

After a non-jury trial in this adversary proceeding on October 24, 2011, and a review of the legal arguments and briefs submitted by the parties, this Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Lisa Denise Pennington ("Pennington") and Marco Antonio Peters ("Peters") (jointly "the Parties") were previously married, and they have two (2) children together.

2. The Parties are involved in an ongoing domestic proceeding pending in Mecklenburg County District Court, captioned <u>Marco Peters, Plaintiff/Father v. Lisa Pennington, Defendant/Mother</u>, Case No. 05-CVD-19849 ("the Domestic Action").

3. James, McElroy & Diehl, P.A. ("JMD") represents Peters in the Domestic Action, with Jonathan D. Feit ("Feit") serving as lead counsel.

4. The Parties became involved in a significant battle from late 2007 to March 2009 in the Domestic Action concerning the custody, support, and care of their children.

5. The trial court in the Domestic Action entered an Order on March 6, 2009, awarding Peters permanent, sole legal custody of the children except as to medical decision-making.

6. That Order found that Peters had "insufficient means to defray costs and expenses incurred in the prosecution of his claims" and that he had been "forced to borrow money from family members to pay for this litigation."

7. The trial court in the Domestic Action concluded that Peters was entitled to child support and attorneys' fees.

8. A hearing on those matters occurred on April 24, 2009. The District Court entered an order on May 20, 2009 providing as follows:

> **a) Beginning May 1, 2009 and by the first (1st) day of each month thereafter until terminated pursuant to the North Carolina General Statutes, [Pennington] shall pay to [Peters] for the support and maintenance of the minor children cash child support in the sum of $976.16.**
>
> **b) As additional child support, [Debtor] shall continue to maintain medical and dental insurance coverage on the minor children. [Mr. Peters] shall pay the first $250.00 per year of the minor children's uninsured medical and dental expenses. [Mr. Peters] shall pay 39% and [Debtor] shall pay 61% of any uninsured medical and dental expenses, including reasonable and necessary costs related to orthodontia, dental care, asthma treatments, physical therapy, and treatment of chronic health problems, of the minor children in excess of $250.00 per year.**
>
> **c) The provisions of the Court's March 6, 2009 Order regarding payment of the minor children's uninsured therapy costs (decretal paragraphs 18 and 19 [set forth below]) shall remain in full force and effect.**
>
>> **18. Based upon the Findings of Fact in this Order regarding [Debtor]'s role in creating this crisis, [Debtor] is ordered to pay all uninsured therapy costs incurred on behalf of the minor children, including the uninsured costs of reunification therapy of [Mr. Peters] and the minor children and of reunification therapy of [Debtor] and the minor children. This is an equitable remedy and is separate and apart from the child support award that will be entered at a later date.**
>>
>> **19. [Debtor] shall submit payment of uninsured therapy costs within seven (7) days of receipt of the invoice from the provider. If [Mr. Peters] is required to pay the uninsured expense at the time of the appointment, [Debtor] shall reimburse [Mr. Peters] within seven (7) days of receiving documentation of said expense.**
>
> **d) [Debtor] shall pay directly to James, McElroy & Diehl, P.A., attorneys for [Mr. Peters], the sum of $266,657.50 as attorney's fees. The attorney's fee award shall be paid as follows:**
>
>> **i. Beginning October 15, 2009 and continuing on the fifteenth (15th) of each month thereafter until the conditions set forth in**

3

    **subparagraph (b) below are met, Defendant/Mother shall pay $800.00 per month toward her attorney's fee obligation.**

    ii.    **At such time as the court-ordered therapy for the minor children is concluded and [Debtor] no longer has this financial responsibility, [Debtor] shall begin paying $1,600.00 per month toward her attorney's fee obligation. [Debtor] shall continue to pay $1,600.00 per month toward her attorney's fee obligation until said obligation is paid in full.**

    iii.    **In the event [Debtor] receives any state or federal income tax refunds, 100% of such refunds shall be paid immediately upon receipt towards her attorney's fees obligation.**

    iv.    **[Debtor] is to provide prompt documentation (within 30 days of receipt) to [Mr. Peters]'s attorney of any other lump sum payment that she receives over and above the income stream documented in this order. Lump sum payments may come from sale of an asset or from any other source. [Mr. Peters]'s attorney may file a motion for judicial assistance upon receipt of such documentation or upon otherwise learning of any lump sum payments received by [Debtor] to request that the Court consider distributing some or all of said lump sum payment towards [Debtor]'s attorney fee obligation. Upon receipt of any lump sum payments as described in this section, [Debtor] is on notice that same may be ordered to satisfy her attorney fee obligation and she would be prudent not to exhaust such funds until and if she is cleared to do so by the Court.**

    v.    **Interest shall accrue on the attorney's fee award in the amount of 6% per annum until the award is paid in full.**

    **…**

    **h)**    **This Order is enforceable by the contempt powers of the Court.**

9.    The trial court made findings at paragraphs 46 – 50 and 87 – 91 showing the financial situation of Peters and his inability to afford the fees owed to JMD as a result of the litigation with Debtor.

10.    Pennington noticed her appeal from this Order and assigned as error, among other things, the award of attorney's fees and various costs to Peters and JMD.

4

11. The Court of Appeals of North Carolina decided such appeal in <u>Peters v. Pennington</u>, --N.C.App. --, 707 S.E.2d 724 (2011). It affirmed that portion of the trial court's award specifically related to attorney's fees and remanded with instructions as to the amount of costs to be properly awarded.

12. The trial court entered an Order Implementing Directives on Remand on June 8, 2011, which states, in pertinent part:

> **6. Finding of Fact 89 of the May 20, 2009 Child Support Order is hereby amended to read as follows:**
>
> **89. In order to defend against false allegations of sexual abuse where Defendant/Mother employed multiple lawyers and experts, Plaintiff/Father was forced to pursue litigation that resulted in him incurring attorney's fees totaling $224,195.50, and assessable non-attorney's-fees costs totaling $3,867.02. The assessable non-attorney's-fee costs consist of $3,200.00 for time charged by Plaintiff/Father's expert Dr. Katherine Kuehnle, Ph.D. for time testifying at trial under subpoena and $667.02 for travel expenses for Dr. Kuehnle to travel to this Court from her place of residence in Florida.**
>
> **7. Finding of Fact 92 of the May 20, 2009 Child Support Order is hereby amended to read as follows:**
>
> **92. Plaintiff/Father incurred legal fees and assessable non-attorney's-fees costs in the total amount of $228,062.52, which breaks down to $224,195.50 in legal fees for roughly 900 hours of attorney time, plus an additional $3,867.02 in assessable costs relating to his testifying expert, Dr. Kathryn Kuehnle, Ph.D.**
>
> **8. Decretal Paragraph 8 of the May 20, 2009 Child Support Order is hereby amended to read as follows:**
>
> **8. Defendant/Mother shall pay directly to James, McElroy & Diehl, P.A., attorneys for Plaintiff/Father, the sum of $224,195.50 as attorney's fees and the sum of $3,867.02 in assessable non-attorney's-fees costs. The attorney's fee and costs award shall be paid as follows:**
>
>> **a. Beginning October 15, 2009 and continuing on the fifteenth (15th) of each month thereafter until the conditions set forth in subparagraph (b) below are met,**

5

> **Defendant/Mother shall pay $800.00 per month toward her attorney's fee and costs obligation.**
>
> **b. At such time as the court-ordered therapy for the minor children is concluded and Defendant/Mother no longer has this financial responsibility, Defendant/Mother shall begin paying $1,600.00 per month toward her attorney's fee and costs obligation. Defendant/Mother shall continue to pay $1,600.00 per month toward her attorney's fee and costs obligation until said obligation is paid in full.**
>
> **c. In the event Defendant/Mother receives any state or federal income tax refunds, 100% of such refunds shall be paid immediately upon receipt towards her attorney's fees and costs obligation.**
>
> **d. Defendant/Mother is to provide prompt documentation (within 30 days of receipt) to Plaintiff/Father's attorney of any other lump sum payment that she receives over and above the income stream documented in this order. Lump sum payments may come from sale of an asset or from any other source. Plaintiff/Father's attorney may file a motion for judicial assistance upon receipt of such documentation or upon otherwise learning of any lump sum payments received by Defendant/Mother to request that the Court consider distributing some or all of said lump sum payment towards Defendant/Mother's attorney's fee and costs obligation. Upon receipt of any lump sum payments as described in this section, Defendant/Mother is on notice that same may be ordered to satisfy her attorney's fee and costs obligation and she would be prudent not to exhaust such funds until and if she is cleared to do so by the Court.**

13. Under the June 8, 2011 Order, Debtor owes to Plaintiffs $224,195.50 as attorneys' fees and the sum of $3,867.02 in assessable non-attorneys'-fees costs (the attorneys' fees and costs totaling $228,062.52 are collectively referred to herein as "the Debt").

14. On or about June 9, 2010, Debtor filed a voluntary petition for relief in this Court under Chapter 7 of the United States Bankruptcy Code.

6

15. In her petition, Debtor listed Peters as a holder of an unsecured priority claim on Schedule E but failed to specify the complete amounts and details comprising the claim as set forth in the May 20, 2009 Order.

16. In her petition, Debtor listed JMD on Schedule F as a holder of an unsecured nonpriority claim.

17. Plaintiffs filed this adversary proceeding on September 13, 2010 within the timeframe permitted by the Court to determine the dischargeability of certain debts.

18. Specifically, Plaintiffs seek a determination that the Debt owed to Plaintiffs by Debtor under the May 20, 2009 Order, as modified and affirmed, on appeal and set forth in the June 8, 2011 Order is nondischargeable in Debtor's Chapter 7 Code case due to its unsecured priority character as either: (i) a domestic support obligation under 11 U.S.C. § 523(a)(5); or, in the alternative (ii) a debt that is owed "to a spouse, former spouse, or child of the debtor and not of the kind described in [11 U.S.C. § 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[]" under 11 U.S.C. § 523(a)(15).

19. Debtor raises several defenses contending that, even if the nature of the Debt is excepted from Debtor's Chapter 7 Discharge, the Court should still modify and amend the amount of the Debt owed to Plaintiffs under the May 20, 2009 Order, as modified and affirmed, on appeal and set forth in the June 8, 2011 Order Order, primarily because Tony Peters received money from his family to pay a substantial portion of the attorney fees he incurred in the underlying domestic support matter. Debtor argues that the portion of attorney fees that debtor received from his family (mother and sister) for representation in the domestic support case

7

should be discharged because the money he received should be construed as a gift, and not a loan, and therefore Mr. Peters had no legal obligation to reimburse his mother and sister for the funds he received. As such, the Debtor argues the portion of the Debt funded by Mr. Peter's family is not a domestic support obligation as the term is defined under 523(a)(5) nor is it a Debt under 523(a)(15) because it was not a Debt to a former spouse (Mr. Peters) but rather a debt owed to Mr. Peters' mother and sister.

20. Debtor further contends, among other things, that neither Tony Peters nor JMD are proper parties to assert that the fees paid to JMD are domestic support obligations, because portions of the fees had been paid by Peters family members at the time the May 20, 2009 Order was entered.

## Conclusions of Law

### The Debt is an Unsecured Priority Claim Excepted from Discharge

21. Under Section 523(a)(5), domestic support obligations are excepted from individual debtors' discharge. 11 U.S.C. § 523(a)(5).

22. A domestic support obligation is defined as a debt that accrues before, on, or after the date of the bankruptcy order for relief that is (i) owed to or recoverable by a spouse, former spouse, or child of the debtor, (ii) in the nature of alimony, maintenance, or support of such spouse, former spouse, or child of the debtor, (iii) established or subject to establishment before, on, or after the date of the bankruptcy order for relief by reason of an order of court, and (iv) is not assigned to a nongovernment entity. 11 U.S.C. § 101(14A).

23. Attorneys' fees provisions in child custody orders are generally considered to be in the nature of support when the award is driven by a spouse's inability to pay. In this case, it is

8

clear from the trial court's order's that the attorneys' fees that were awarded were granted based on Plaintiff's inability to compensate his attorneys.

24.     The Bankruptcy Abuse Prevention and Consumer Protection Act did add a new and separate definitional section to the provisions dealing with domestic support obligations. However the legislative history of the Act reveals that its intent was to add additional groups of persons to which it applies, rather than to narrow the scope of the Court's ability to declare a domestic support obligation to be non-dischargeable.  There was no intent by Congress to disturb the rulings under well settled law that attorney fees are domestic support obligations and that Plaintiff and JMD are each proper persons to rely on this non-dischargeability provision; despite the fact that Plaintiff borrowed from his family to pay his attorneys. The statute and the well settled case law that defines the nature of the debt that is excepted from discharge under 523(a)(5) and 523(a)(15) focuses on the spouse's domestic obligation and not on how it was funded. It is the nature of the debt, rather than the identity of the creditor, that controls. *Levin v. Greco*, 415 B.R. 663, 666-67 (N.D. Ill. 2009).  Thus, it is irrelevant whether Mr. Peters took out loans or received money from his family, the attorneys fees was Mr. Peter's obligation and is in the nature of domestic support and therefore the entire amount is non-dischargeable under 523(a)(5) and 523(15).

25.     Awards of attorneys' fees in domestic cases are generally deemed to be in the nature of support for purposes of Section 523(a)(5) and are therefore nondischargeable. See e.g., Macy v. Macy, 114 F.3d 1, 2-3 (1st Cir. 1997); see also In re Silansky, 897 F.2d 743, 744 (4th Cir. 1990).

26.     Based upon the foregoing Findings of Fact and applicable law, the Debt is a domestic support obligation under 11 U.S.C. § 523(a)(5), an unsecured priority claim, and is

9

excepted from Debtor's Chapter 7 Discharge. Debtor remains personally and individually liable for the Debt under the terms of the June 8, 2011 Order.

27. In the alternative, Section 523(a)(15) excepts from a bankruptcy discharge a debt that is owed "to a spouse, former spouse, or child of the debtor and not of the kind described in [11 U.S.C. § 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." 11 U.S.C. § 523(a)(15).

28. To be excepted from discharge under section 523(a)(15), it must be shown that the debt in question: (1) is owed to a spouse, or former spouse; (2) is not a domestic support obligation as referenced in section 523(a)(5); and (3) was incurred in connection with a separation agreement or divorce decree. Id.; see also In re Cunningham, 2008 WL 6192259 at *3 (Bankr. N.D. Ohio 2008) (citations omitted).

29. Similar to the analysis concerning Section 523(a)(5), courts have held that the debt excepted under Section 523(a)(15) may include attorneys' fees. See In re Ballard, 2011 WL 2133529 at *2-3 (Bankr. E.D.KY 2011).

30. Based upon the foregoing Findings of Fact and applicable law, to the extent the Debt is not a domestic support obligation, it does satisfy the requirements for exception from discharge under Section 523(a)(15) as an unsecured priority claim. Debtor remains personally and individually liable for the Debt under the terms of the June 8, 2011 Order.

31. The Debt is a priority claim, is excepted from Debtor's Chapter 7 Discharge, and remains in full force and effect.

The State Courts' Determination and Calculation of the Debt Controls

32. Notwithstanding debtor's arguments that the Debt should not be excepted from discharge under 523(5) and 523(15), this Court is bound the decisions of the North Carolina state courts, including the District Court's June 8, 2011 Order.

33. As shown by the record of this case as well as those of the Domestic Action, the existence and amount of the Debt have been well-litigated in the state trial and appellate courts by Debtor and Plaintiffs, on behalf of Peters.

34. While a bankruptcy court certainly has the power to issue judgments and orders,

> when a prior state court judgment is the debt at issue, we are of opinion that the bankruptcy court, in an adversary proceeding to determine whether the debt is dischargeable, cannot issue its own judgment on the debt to replace the state court judgment previously obtained. All the bankruptcy court is called upon, or authorized to do, is to determine whether or not the state judgment is dischargeable.

In re Heckert, 272 F.3d 253, 257 (4th Cir. 2001).

35. There are four related doctrines that preclude Debtor from challenging, and this Court from modifying, the Debt imposed by the valid and final state court decisions. These include 28 U.S.C. § 1738, collateral estoppel, res judicata, and the *Rooker-Feldman* Doctrine.

36. Pursuant to 28 U.S.C. § 1738, state court "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738 (1948); see also In re Genesys Data Tech., Inc., 204 F.3d 124, 127 (4th Cir. 2000) (citing statute). Under this full faith and credit statute, a bankruptcy court is required to give "*the same effect* to the judgment as the rendering court would have given it." In re Heckert, 272 F.3d 253, 259 (4th Cir. 2001) (emphasis in original). A judgment is not given *the same effect* if a bankruptcy court either reverses, or modifies, the judgment. Id.

11

37. Collateral estoppel, also known as issue preclusion, prevents a party from religitating specific issues that have been determined in previous litigation. Sartin v. Macik, 535 F.3d 284 (4th Cir. 2008); see also In re Ansari, 113 F.3d 17 (4th Cir. 1997) (applying collateral estoppel to bankruptcy proceedings) (citing Grogan v. Garner, 498 U.S. 279, 284 & n.11 (1991)); see also In re Walker, 416 B.R. 449, 464 (Bankr. W.D.N.C. 2009) ("The doctrine of collateral estoppel applies in bankruptcy dischargeability actions."). North Carolina law recognizes traditional collateral estoppel "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." In re Walker at 465 (quoting Restatement (Second) of Judgments § 27 (1982)).

38. Res judicata exists when "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." Moody v. Able Outdoor, Inc., 169 N.C. App. 80, 84, 609 S.E.2d 259, 261-62 (2005). Res judicata not only prevents a party from relitigating those matters already decided, "but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." Id. While res judicata does not necessarily prevent a bankruptcy court from determining dischargeability of a prior state court order, see In re Walker, 416 B.R. at 462-63 (citing Brown v. Felsen, 442 U.S. 127, 138-39 (1979)), it does prevent a party from relitigating claims that were, or could have been, litigated below. Id. Specifically in the nondischargeability context, res judicata has been applied to prevent a party from relitigating prior claims in an effort to overturn, increase, or decrease the amount of the state court judgment. In re Heckert, 272 F.3d at 258-59 (holding that a bankruptcy court erred by not giving a state

court judgment res judicata effect); see also In re Merritt, 99-81948C-7D, 2001 WL 1699697 (Bankr. M.D.N.C. Aug. 30, 2001) (applying res judicata and finding that a state court order was "a bar to the relitigation of the dischargeability of the same debt in this proceeding.").

39. The *Rooker-Feldman* Doctrine proscribes state-court parties from bringing "follow-up actions in federal court for the purpose of complaining of errors and injuries caused by state court judgments and inviting federal court review of those judgments." In re Walker, 416 B.R. at 461 (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005)). *Rooker-Feldman* is premised on the fact that federal district courts do not have appellate jurisdiction over state court judgments. See Exxon Mobil at 291. While *Rooker-Feldman* does not supplant rules of preclusion, and some courts have found it inapplicable in bankruptcy adversary proceedings, see Sartin v. Macik, 535 F.3d 284, at n.1 (4th Cir. 2008), other courts have applied it to prevent bankruptcy debtors from relitigating the underlying state court decision during subsequent adversary proceedings. See, e.g., In re Walker at 461-62.

40. Any of these four legal doctrines are sufficient to require this Court to defer to the North Carolina State Courts as to the existence and amount of the Debt control.

41. At this stage of review in a federal bankruptcy adversary proceeding, this Court is bound by the previous rulings of the North Carolina district and appellate courts in the Domestic Action. Its consideration and judgment herein is limited solely to the issue of dischargeability of the Debt, not its amount.

42. Based upon the foregoing Findings of Fact and applicable law, the amount of the Debt remains as set forth in the June 8, 2011 Order -- $228,062.52 (comprised of $224,195.50 as attorneys' fees and the sum of $3,867.02 in assessable non-attorneys'-fees costs).

It is hereby **ORDERED, ADJUDGED** and **DECREED** that the Debt is hereby accepted from Debtor's Chapter 7 Discharge.  The terms of the June 8, 2011 Order pertaining to the Debt as set forth above remain in full force and effect.  Debtor remains personally and individually liable to Plaintiffs in the amount of $228,062.52 ($224,195.50 as attorneys' fees and the sum of $3,867.02 in assessable non-attorneys'-fees costs) under the terms of the June 8, 2011 Order.

**SO ORDERED.**

```
This Order has been signed electronically.      United States Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of the Order.
```